MABEL M. MAHONEY *vs.* ANNA V. SMITH, *Adm'x.*

FEBRUARY 21, 1951.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This action of the case for services is based

on a claim by Anna V. Smith against the estate of Mary J. McCaffrey, late of the city of Providence, deceased, of which estate she is the administratrix *c.t.a.* The claim was disallowed by Mabel M. Mahoney, the sole heir at law of Mrs. McCaffrey. Compliance with all statutory requirements for the filing and prosecution of such a claim is conceded. Hereinafter Anna V. Smith will be referred to as the appellee and Mabel M. Mahoney as the appellant. The trial in the superior court resulted in a verdict for the appellee in the full amount of the claim, namely, $750. Appellant's motion for a new trial was thereafter granted by the trial justice. The case is before us solely on appellee's exception to that decision.

The evidence shows that Mary J. McCaffrey, who was childless, died in Providence on June 22, 1942 at the age of sixty-eight leaving a will wherein her husband was named sole beneficiary and executor. He predeceased her and, in the absence of any alternative provision in the will, appellant, the daughter of testatrix' half sister, became her sole heir at law. The will was admitted to probate on August 25, 1942 and on that same day appellee was appointed administratrix *c.t.a.* upon a petition signed by appellant.

At that time the two women were on friendly terms. Disagreement between them apparently arose when appellant learned that under certain proceedings initiated in the probate court, which are immaterial here, she would be unable to collect the rents from Mrs. McCaffrey's real estate, that is, a three-tenement house in Providence. Thereafter, on October 21, 1942, the present claim was filed and it was disallowed March 27, 1943. With the exception of two or three months, appellant collected the rents from the aforementioned real estate.

Following the death of her husband Mrs. McCaffrey lived alone in a tenement of her house. There is no question that, although not related, she and appellee had been intimate friends for some fifty years. Whether Mrs.

McCaffrey reposed full confidence in appellant, who lived with friends in an apartment in another part of the city, is not clear. On April 23, 1940 Mrs. McCaffrey added appellee's name to her savings account of $3,476. The authorization for that change requested that the account be "payable to either or the survivor of them * * *"; and further "that the survivor shall hold said deposit absolutely as her estate and that free of any claims of the estate of the decedent." Subsequent withdrawals by Mrs. McCaffrey reduced the amount to some $3,000. On this point appellee testified, without contradiction, that about $1,000 of that amount represented the repayment of money which she had loaned to Mrs. McCaffrey at various times and that the balance was a gift.

With reference to the claim under consideration appellee testified that at the request of Mrs. McCaffrey, who was ill with high blood pressure and hardening of the arteries, she nursed her and kept house for her from about nine o'clock in the morning until five in the afternoon for thirty-four weeks from March 9, 1940 and that she performed the same services for sixteen weeks in 1942 during Mrs. McCaffrey's last illness. Notwithstanding some indefinite testimony to the contrary from appellant the evidence clearly established the rendition of those services.

The real issue between the parties was whether such services were gratuitous or rendered for pay at the rate of $15 a week. Appellee testified that in discussing the matter with Mrs. McCaffrey the latter on several occasions said she intended to pay her out of the proceeds from the sale of the house which she contemplated selling because the care of it had become burdensome. In this appellee was fully corroborated by two friends and neighbors of Mrs. McCaffrey. Against such testimony was that of appellant, the only witness in her behalf on the merits. She testified that Mrs. McCaffrey never told her that she intended to sell the house and that she, the witness, "always figured Anna was a friend of the family" who

"was never on the payroll," meaning thereby "anybody who is getting wages for working and being down there * * *."

The appellee contends that the trial justice failed to pass his own independent judgment on the evidence in accordance with the law. In our judgment this contention has force. The only ground upon which the trial justice rests his decision granting a new trial is that, because the jury returned its verdict in half an hour, it "disregarded the evidence" and "passed hastily upon the case, acting more on emotion rather than on the testimony." But he brings nothing to our attention indicating even in general terms wherein, *on the evidence,* the jury had failed to give proper consideration to the case. In the absence of any evaluation of the evidence by the trial justice his reason for granting a new trial is mere surmise and as such is without persuasive force.

Ordinarily the time consumed by a jury in its deliberation is no criterion in determining the merits of a case, especially if the issue is a narrow and simple one. It is the evidence and not the time that the jury may have taken in reaching its verdict that is controlling in the consideration of a motion for a new trial. For similar instances, see *Carrara* v. *Noonan,* 69 R. I. 111, 114, and *O'Connell* v. *Ford,* 58 R. I. 111, 115. This is not a complicated case and the trial justice so viewed it when he told the jury in the charge that the case was "very, very simple and elementary." Apparently the jury entertained a similar view and therefore was able to arrive at an early decision. We therefore cannot accord to the decision of the trial justice the weight that is usually given to such a decision when it fairly appears therefrom that he has passed his own independent judgment on the weight of the evidence and the credibility of the witnesses in accordance with our firmly-established rule, following *Wilcox* v. *Rhode Island Co.,* 29 R. I. 292.

In the circumstances we have made an independent examination of the evidence so that we might determine whether or not in our judgment the evidence strongly

preponderates against the verdict, which is the accepted appellate rule in such a situation. *Audette* v. *New England Transportation Co.*, 71 R. I. 420, 428; *Bradley* v. *Brayton*, 61 R. I. 44, 47. As we have already indicated it is clear that the appellee rendered the services in question. In the matter of compensation for those services her testimony as to when and how Mary J. McCaffrey intended to pay her therefor is corroborated by two apparently disinterested witnesses who testified in a straightforward and convincing manner. Such testimony, which was not inherently improbable, stands uncontradicted and unimpeached. From our examination of the record we are unable to say that the evidence strongly preponderates against the verdict.

The appellee's exception is sustained, and the case is remitted to the superior court for entry of judgment on the verdict.

*Harold S. Moskol*, for appellant.

*Clement E. Lennon, Christopher J. Brennan*, for appellee.